[No. 5406.]

FRANK KENNEDY, AS TRUSTEE FOR THOMAS O. LAR-KIN AND ADELINE MINNIE LARKIN, *v.* MAT-THEW NUNAN, SHERIFF OF THE CITY AND COUNTY OF SAN FRANCISCO, J. B. FARGO, AND B. F. JELLI-SON.

WHAT MAY BE SOLD ON EXECUTION.—If a deed of trust leaves an interest in the trust property in the grantor, such interest may be sold on an execution against him.

APPEAL from the District Court, Nineteenth Judicial District, City and County of San Francisco.

On the 5th day of October, 1869, Thomas O. Larkin, who was the owner of a lot at the southerly corner of Mission and Fremont Streets, City and County of San Francisco, executed to Frank Kennedy a deed of the same to hold it in trust, to receive the rents and profits of the same, and to pay his daughter, Adeline Minnie Larkin, fifty dollars per month out of the same, during her natural life, and providing that should the daughter die before the trustor did, then the amount settled on her should

vest in the trustor to be used by the trustor for his benefit; but if the daughter survived him, then the charge should descend to her legal representatives. The deed further provided that the trustee should also hold the property in trust to pay the trustor the balance of the rents, issues, and profits of the lot, and that the trusts created should continue only during the natural life of the trustor and *cestui que trust*, and at the decease of either, that their respective estates should descend according to law to their legal representatives. The trustee was given full power to control, manage, and protect the property, and to alienate it. The deed of trust was recorded on the 5th day of October, 1869. On the 29th day of June, 1875, J. B. Fargo recovered a judgment in the District Court of the Twelfth District, City and County of San Francisco, against said Larkin, for seven thousand one hundred and eighty-nine dollars, and on the 24th of December, 1875, Fargo assigned the judgment to B. F. Jellison. On the 28th of March, 1876, an execution on the judgment was placed in the hands of defendant Nunan, the Sheriff, and he advertised the interest of Larkin in the trust property for sale on the 8th day of July, 1876. The plaintiff commenced this action to enjoin the sale, and the Court made order granting a preliminary injunction, from which order the defendants appealed.

*M. A. Edmonds*, for the Appellants.

A trust to receive the rents and profits of lands and pay them over was a familiar trust at common law, (36 Hen. VIII, 1 Cr. Dig. Tit. 12, chap. 1, sec. 12) and gave the *cestui que trust* an equitable estate in the lands. (4 Kent, margin, p. 310, note *b*; 1 Cr. Dig. Tit. 12, chap. 2; Story Eq. Jur. secs. 974, 974*a*, 975; Perry on Trusts, sec. 357, *et seq.*) And such equitable estate was subject to most of the incidents of a legal estate. In particular, it was descendable, devisable, and alienable.

Under our practice any interest in lands, legal or equitable, of the execution debtor may be sold on execution. (Code of Civil Procedure, secs. 548–688.)

The learned counsel for respondent cited a number of au-

thorities in the Court below, holding that the interest of a *cestui que trust* in lands is not leviable when others are also beneficiaries under the trust. (See Freeman on Executions, secs. 187 and 188.) There are many authorities to that effect in the various States, and others holding that no equitable interest, unless it be the interest of a fraudulent grantor, which, as to attaching creditors, is not deemed an equitable but a legal interest, can be reached by execution. But decisions of this character in the other States are no guide to the construction of our statute.

In most of the States, where equitable interests of any kind can be reached by execution, it is done under statutes similar in phraseology and effect to the Statute of 29 Charles II, chap. 3, séc. 10, or else under the extra-territorial Statute of 5 George II, chap. 7, sec. 4, extending the provisions of the Statute of Charles II to the Colonies, and still held to be in force in some of the older States.

These statutes, as being an innovation upon the common law, have in general been strictly construed; and the reason for it is plain as " A B C." At the common law, no estate in lands other than leaseholds could be reached by execution. A *fieri facias* only ran against goods and chattels, including leasehold interests, and a *levari facias* against chattels and the rents and profits of lands. The Statute of Westminster 2 subjected a moiety of the debtor's lands to an *elegit*, until the debt was satisfied out of the rents and profits. But no equitable interest could be reached in lands by an *elegit*, nor in goods and chattels by a *fieri facias*, because these were writs issued from Courts of Law, and these Courts did not recognize an equitable interest, and could not deal with it. It was a creature of equity, and could be reached and dealt with only in equity.

The Statute of 29 Chas. II, chap. 3, sec. 10, was intended to remedy this inconvenience. It authorized the officer to whom a precept was directed upon any judgment " to do, make, and deliver execution unto the party in that behalf suing, of all such lands, tenements, rectories, tithes, rents, and hereditaments, as any other person or persons are in any manner or wise seized or possessed in trust for him against whom execution is so sued,

like as the Sheriff or other officer might or ought to have done, if the said party against whom execution was sued had been seized of such lands, etc., of such estate, as they are seized of in trust for him."

But it has been held that the words of this statute, " seized or possessed in trust for him against whom execution is sued," extend only to cases where the execution debtor is the sole beneficiary under the trust. (*Doe* v. *Greenhill*, 4 Barn. & Ald. 690; Freeman on Executions, secs. 187, 188.)

And the American decisions under similar statutes have followed pretty uniformly the construction given to the statute of Charles. (*White* v. *Kavanagh*, 8 Rich. 394, 395; *Bogert* v. *Perry*, 17 Johns. 351, and other authorities cited by Mr. Freeman in his work on Executions, *ubi supra.*)

The construction given to the Statute of Charles was inevitable. For under the English practice lands were not sold on execution, but extended under an *elegit;* and as this required the possession to be given to the execution creditor, it followed that only those lands could be extended of which the debtor had an immediate and exclusive legal or equitable right of possession. And this, in cases of trusts, could only be where the debtor was the sole beneficiary.

A similar practice has always existed in several of the American States; and in others, where the land is sold under the execution, the decisions have been influenced partly by the known construction of the Statute of Charles, and partly by the phraseology of the State or Colonial Statute. Thus, in New York, the statute declared that the lands of a *cestui que trust*, sold under execution, " by force and virtue of such execution, shall accordingly be held and enjoyed, *freed and discharged* of all incumbrances of such persons as are so seized and possessed, to the use, or in trust, for such person against whom such execution is sued." This, it was held, could not be, in case of a mixed trust, (*Bogert* v. *Perry*, 17 Johns. 354) and the same or similar language in other statutes has received a similar construction. In North Carolina, under their statute, it is held that a sale of trust property on execution divests the estate of *cestui que trust* and trustee both; and hence no such sale can be per-

mitted in cases of mixed trusts, where the execution debtor is not the sole beneficiary, and has not the immediate equitable right of exclusive possession. (*Brown* v. *Graves*, 4 Hawks, 346, 347; *Burgin* v. *Burgin*, 1 Ired. 162.)

Our statute, on the contrary, authorizes a sale on execution of every kind of property, and every interest in property which is, or may be, the subject of private ownership and transfer. It does not mention equitable estates and interests *eo nomine*, but that is a peculiarity of the Code. It deals with equitable rights and interests as it deals with legal, without anywhere expressly recognizing the distinction existing between them. The phrase " equitable estates," " equitable interests," or " equitable rights," is not found within the lids of the Code. But it directs the officer how to levy on " real property, or *any interest* therein, belonging to the defendant, and held by any other person, or standing on the records of the county in the name of any other person." (Code Civil Procedure, sec. 542, sub. 2.)

*J. P. Hoge* and *M. A. Edmonds*, also for the Appellants.

*Haight & Taylor*, for the Respondents.

The land, as has been seen, was conveyed to Kennedy (plaintiff and respondent) in trust for the maintenance of the settler and his infant daughter during their natural lives, with remainder over to their legal representatives, the deed of trust granting an absolute and irrevocable power of sale. This operated a conveyance of the fee, and left nothing in the grantor. (*Estate of Delaney*, 49 Cal. 76–84; *Bryan* v. *Knickerbocker*, 1 Barb. Ch. 409; *Vaux* v. *Parke*, 7 Watts & S. 19; *McIlvaine* v. *Smith*, 42 Mo. 45.)

These cases are conclusive to the point that only those equitable estates can be reached on execution over which the *cestui que trust* has control, and the whole beneficial interest in which is vested in him.

As matter of law, independently of statute, it is held by the Supreme Court of the United States in the late case of *Nichols* v. *Eaton*, 1 Otto, 716, that it is competent for a settlement to be made which shall put even the *income* of the trust beyond the

reach of creditors, thus profoundly modifying some of the English cases. (See, also, 1 Wall. Jr. 107, and opinion of Binney in note at foot of page 119. See, also, sec. 859 Civil Code.)

By the Court:

It is provided by sec. 688 Code Civil Procedure, that " all goods, chattels, moneys, and other property, both real and personal, or any interest therein, of the judgment debtor, not exempt by law, * * * are liable to execution." The deed of trust vested or left an interest in the property in question in Thomas O. Larkin, and such interest is, under the Code, subject to sale under execution.

Order reversed.