[Civ. No. 1791. Third Appellate District.—January 24, 1918.]

WILLIAM FRANCK, as Administrator, etc., Respondent, v. JOHN MORAN et al., Appellants.

FRAUDULENT CONVEYANCES — LACK OF VALUABLE CONSIDERATION—PRESUMPTION UNDER SECTION 3442, CIVIL CODE.—Under section 3442 of the Civil Code, if a transfer of property is made without a valuable consideration and while the grantor is insolvent or contemplates insolvency, the indisputable presumption follows that the transaction is fraudulent, and the conveyance may be set aside at the instance of a creditor.

ID. — RECITAL OF VALUABLE CONSIDERATION — LACK OF CONTRADICTORY EVIDENCE — CONVEYANCE FOR VALUABLE CONSIDERATION. — A deed reciting a consideration of love and affection, better support and

maintenance, one dollar, and other good and valuable considerations, cannot be held to be a conveyance without a valuable consideration, in the absence of any evidence contradicting the express declarations of the instrument.

ID.—INTENT TO DEFRAUD—QUESTION OF FACT—BURDEN OF PROOF.—To make a conveyance fraudulent under section 3449 of the Civil Code, there must be the intent in the mind of the grantor to delay or defraud a creditor or other person of his demands, and the question is one of fact and not of law, with the burden of proof upon the complaining creditor to show that the conveyance was made with such intent.

ID.—INTENT TO DEFRAUD FUTURE CREDITORS.—The intent to defraud is not limited to the debt owed at the time of the conveyance, but the conveyance is equally subject to nullification if the intention existed to defraud a future creditor of a just claim.

ID.—FINDING OF INTENT TO DEFRAUD—EVIDENCE—APPEAL.—Intent to defraud creditors is to be determined from all the surrounding facts, and if a finding in reference thereto may be said to constitute a rational inference from the evidence, it cannot be disturbed by the appellate court.

ID.—EVIDENCE OF INTENT TO DEFRAUD.—When it is shown that a person is indebted to another, and so continues, and that he has divested himself of all his property and thereby renders himself incapable of paying his debts, it may be just and reasonable to hold that he intended when he executed the conveyance to render the creditor powerless to obtain the satisfaction of his claim.

ID.—SILENCE OF GRANTEES — FAILURE TO RECORD CONVEYANCE—ESTOPPEL AS AGAINST CREDITORS OF GRANTOR.—Where credit was extended on the faith that the grantor was owner of the property, it would be inequitable to allow the grantees, who remained silent and failed to record their conveyance until the indebtedness was incurred, to prevent the creditor from resorting to such property, especially where the grantor is insolvent.

ID.—ACTION TO SET ASIDE DEED—CONSPIRACY—JOINT LIABILITY.—In an action to set aside a deed to real property on the ground that the same was made without consideration and with intent to defraud creditors, where there was some evidence that the defendant, to whom a deed was executed a short time before the action was commenced, became a party to the conspiracy to defraud, it cannot be held inequitable to hold him jointly liable for the consequences of the conspiracy, although he was not directly connected with the fraudulent purpose in the beginning.

APPEAL from a judgment of the Superior Court of Shasta County. J. E. Barber, Judge.

The facts are stated in the opinion of the court.

36 Cal. App.—3

Braynard & Kimball, for Appellants.

W. D. Tillotson, for Respondent.

BURNETT, J.—This is an appeal from the judgment rendered by the superior court of Shasta County in a suit in equity to set aside two deeds to real property, in which action defendants' motion for a new trial was denied.

The property in question was, on November 18, 1905, owned by Sarah B. Hunter, who at that time and at all times subsequently had but one creditor, Franck & Co., to whom she then owed $640.46. On said date she executed a trust deed to J. E. Hunter and Grant Hunter for the benefit of Laura Hunter Newman, Ralph Newman, and Ruby Newman (Mrs. Moran), with directions to trustees to sell at Mrs. Laura Newman's orders and pay all proceeds to said Laura Newman. This deed was not recorded until 1915. It appears that on January 1, 1909, Sarah B. Hunter was indebted to Franck & Co. in the sum of $2,614.25, on January 1, 1910, in the sum of $3,499.90, and on January 1, 1911, in the sum of $1,287.50. On December 31, 1910, she was given a credit of $2,850, and during the next two years ending December 31, 1912, she was credited with one thousand two hundred dollars. It thus appears that, from 1905 to December 31, 1912, she was credited with $4,050, and that the credit on December 31, 1910, was sufficient to cover the indebtedness as it stood on January 1, 1909. On January 23, 1913, Sarah B. Hunter executed a deed of the property covered by the trust deed to Laura Hunter Newman, which was recorded April 25, 1913. It may be noted in passing that respondent argues that this amounted to a repudiation by Laura Newman of the former trust deed. Sarah B. Hunter died March 31, 1913, and at the date of her death was indebted to Franck & Co. in the sum of $1,203.60. On March 27, 1915, letters of administration were issued to respondent, William Franck, one of the members of the firm of Franck & Co., and on April 7, 1915, he commenced suit against appellant, Laura Hunter Newman, to set aside the deed recorded April 25, 1913. In this action a *lis pendens* was filed and recorded. Shortly thereafter, on May 6, 1915, the trust deed, dated November 18, 1905, was recorded, and soon after, on June 5, 1915, a deed from the trustees was executed to John Moran,

for which appellants claim Moran paid one thousand dollars. In September, 1915, the action was tried and the deed of 1913 was ordered canceled.

But, on July 29, 1915, plaintiff had started this action to set aside the trust deed of 1905 and the deed to Moran, alleging that they were made without consideration and to hinder, delay, and defraud creditors, and that John Moran took his deed with notice of the creditor's claim and in furtherance of a conspiracy to defraud said creditor.

At the conclusion of the trial the court made its findings, among which were the following: (1) That the trust deed was made without consideration and for the purpose of defrauding creditors at a time when the grantor, Sarah B. Hunter, was insolvent; (2) That the deed to John Moran was made without consideration and for the purpose of hindering, delaying, and defrauding the creditors of Sarah B. Hunter; (3) That John Moran took said deed in pursuance of a conspiracy to defraud the creditors of the estate of Sarah B. Hunter; (4) That the trust deed and the deed to John Moran were recorded for the purpose of hindering, delaying, and defrauding creditors of Sarah B. Hunter, deceased; (5) That Sarah B. Hunter owned the property in controversy on January 23, 1913, the date of the deed to Laura Newman, declared canceled in the prior action.

The main complaint of appellants is that the above findings are not supported by the evidence.

The finding as to the said trust deed is the first consideration inviting attention. As to this, it is the contention of appellants that "there is no evidence that the trust deed was made without consideration, or that Sarah B. Hunter made the trust deed for the purpose of defrauding her creditors, or that she was at that time insolvent." The position is taken in contemplation of the statutory inhibition of what has been characterized as "actual fraud" and also of "constructive fraud." The former is referred to in section 3439 and the latter in section 3442 of the Civil Code. More strictly speaking, however, the latter prescribes a rule of evidence as to what shall indubitably constitute fraud. In other words, if a transfer of property is made "without a valuable consideration" and while the grantor is *insolvent* or *contemplates insolvency*, the indisputable presumption follows that the transaction is fraudulent and the deed may be

set aside at the instance of a creditor. Regarding this phase of the case first, we may observe, the contention of appellants is that the recitals in the trust deed were the only evidence offered as to the consideration for which the deed was given, and these recitals are conclusive that such consideration was valuable. Thus it appears therein: "Now therefore, in consideration of the premises and of the love and affection which the said party of the first part has and bears unto the said parties of the third part and for their better support, maintenance and protection as well as in consideration of the sum of one dollar in lawful money of the United States and other good and valuable consideration which the said party of the first part acknowledges to have received of and from said parties of the third part," etc. Appellants made no attempt to controvert said recital, and hence it could not be held that the transfer was "without valuable consideration." While the express declarations of the deed as to the consideration may be contradicted and controlled by parol evidence, if satisfactory, there was no such evidence offered herein, and there is no sufficient support, therefore, for the finding "that the said purported trust deed dated November 18, 1905, was without consideration." It will not be disputed that the burden of proof was upon plaintiff to overcome the proper interference from said recital, and it is equally plain that in this respect his position is vulnerable. As to the necessity for such proof on his part, we may refer to section 1615 of the Civil Code. (*Anthony* v. *Chapman,* 65 Cal. 73, [2 Pac. 889] ; *Duffy* v. *Duffy,* 104 Cal. 602, [38 Pac. 443].)

With equal earnestness appellants urge that the proof fails to make out a case contemplated by said section 3439. To make the instrument fraudulent under that statute there must be the intent in the mind of the grantor "to delay or defraud any creditor or other person of his demands." This is undoubtedly a question of fact and not of law, and the burden of proof is upon the complaining creditor to show that the conveyance was made with such intent. (*Schell* v. *Gamble,* 153 Cal. 449, [95 Pac. 870].) The only creditor at the time was E. Franck & Co. and the amount of the indebtedness was $640.46. This was paid afterward, and it is claimed that this furnishes conclusive evidence that at the time of the execution of the deed she had no intention of defrauding her creditor. The principle, however, is not limited to the debt

owed at the time of the conveyance. The deed would be equally subject to nullification if the intention existed to defraud a future creditor of a just claim, and in this connection it is to be recalled that she continued to do business with said firm for many years and was at no time entirely free from financial obligation to said Franck & Co. Of course, it is generally difficult to prove satisfactorily the intent in cases like this. It is not to be expected that the grantor would declare a purpose to defraud his creditors. Indeed, it is natural to suppose that he would, if possible, conceal such purpose and so dispose the circumstances, if he could, that a fraudulent intent could not be shown. The trial court is to reach a conclusion from the consideration of all the surrounding facts, and if the finding may be said to constitute a rational inference from the evidence, it cannot be disturbed by the appellate court. We think the lower court may have reasonably concluded that on said November 18, 1905, Mrs. Hunter rendered herself insolvent by conveying all her property. The showing as to this, it is true, is not very persuasive, but Mr. Franck's testimony under the circumstances should be deemed sufficient in view of the difficulty of proving the fact and the absence of any evidence that she had other property. In addition, it is clear that she continued indebted to the company till her death and left no property to satisfy the obligation. It is not unreasonable to conclude that she anticipated and contemplated that condition, and that when she performed the very act that would prevent her from paying her just indebtedness, she had the intention of accomplishing that result. In other words, when it is shown that a person is indebted to another and so continues, and that he has divested himself of all his property and thereby renders himself incapable of paying his debts, it may be just and reasonable to hold that he intended when he executed the conveyance to render the creditor powerless to obtain the satisfaction of his claim, and that this intention is virtually a fraud upon the creditor and should not be countenanced in a court of justice. Of course, we do not say that a finding to the contrary might not have been justified, but we think the conclusion of the court in favor of respondent is not unreasonable.

There is a slightly different view of the case set forth in the pleadings and disclosed by the evidence which harmonizes

with the findings of the lower court and comports with the demands of equity and good conscience. It involves the principle of equitable estoppel. The credit for the indebtedness herein was extended Mrs. Hunter on the faith that she was the owner of the premises concerned in the suit. Mr. William Franck so answered in response to the question whether the firm extended credit "in the belief and understanding that Sarah B. Hunter owned the house and lot in French Gulch." There was no evidence to the contrary and we must accept such as the fact. Under these circumstances it would be inequitable to allow the grantees after remaining silent and failing to record the deed until said indebtedness was incurred to prevent the creditor from resorting to said property for the satisfaction of its claim. As between the vendee and creditor, in such a case, the vendor will still be considered the owner of the property. Otherwise, he would be permitted to perpetrate a gross fraud upon the creditor. And the decisions are to the effect that the deed will be treated as fraudulent and void as to creditors without regard to whether the parties to the deed intended any fraud or not. There are many cases to the point, but we content ourselves with this quotation from *Curtis* v. *Lewis,* 74 Conn. 367, [50 Atl. 878]: "This rule of righteousness and broad principle of public policy . . . as it relates to the delusion and injury of creditors through secret conveyance of land, it rests upon the principle, common to all jurisprudence, which imposes upon every man the duty of surrendering to those justly entitled, property in his legal possession which in equity and good conscience he ought not to retain and which forbids anyone to assert his rights when in equity and good conscience he ought not to assert them against one who has been injured and deceived through his conduct in respect to such rights." The circumstance of insolvency on the part of the grantor, which we have already considered, furnishes an additional reason for applying such principle as against the grantees. (*Clark* v. *Lewis,* 215 Mo. 173, [114 S. W. 604].)

The other consideration of importance relates to the question of whether Moran was a purchaser for value and in good faith. There is evidence that he paid one thousand dollars for the deed, but there is no showing that he took without notice of the fraudulent character of the conveyance of November 18, 1905, or of the claim of respondent. He

was the son-in-law of Laura Hunter Newman, one of the beneficiaries in the trust deed, and the husband of another beneficiary, and this consideration would furnish some ground for the inference that he had knowledge of the situation. Moreover, there was a *lis pendens* filed and recorded on April 7, 1915, in the case of William Franck, as Administrator of the Estate of Sarah B. Hunter, Deceased, *v.* Laura Hunter Newman, setting forth the claim of the plaintiff to the property in controversy, and Moran's deed being subsequent to this date, the presumption is that he was speculating on the chance of defeating a just claim. Besides, it is alleged in the complaint and not denied in the answer ''that said John Moran well knew of the pendency of said action and the said John Moran took said deed of conveyance knowing of the claim of the said E. Franck & Co. against the said estate of said Sarah B. Hunter, deceased.'' It may be remarked, also, as of some significance, that Moran was not a witness at the trial nor was any explanation offered for his failure to testify.

There seems to be no doubt that the trial court was warranted in holding that Moran's deed was without validity.

In addition to the cancellation of said deed of trust, the judgment provided for damages in the sum of $202 for the rents and profits of the property subsequent to the time of the death of said Sarah B. Hunter, and it is claimed by appellant Moran that he is not liable for any portion of that sum, as his deed was executed only a short time before this action was commenced. But we think it sufficient to say that the appeal is taken jointly by all the defendants and from the whole of the judgment, and this court would hardly be justified in reversing a part of that judgment in favor of one of the appellants. Besides, we think there is some evidence that Moran became party to a conspiracy to defraud respondent, and it is not inequitable to hold him jointly responsible for the consequences of that conspiracy, although he was not directly connected with the fraudulent purpose in the beginning.

We think the judgment just, and it is, therefore, affirmed.

Chipman, P. J., and Hart, J., concurred.