[L. A. No. 8775. In Bank.—January 31, 1929.]

S. J. PARSONS, Respondent, v. ANNIE DELL ROBINSON et al., Appellants.

Hilton & Christensen for Appellants.

S. J. Parsons, *in pro. per.*, for Respondent.

CURTIS, J.—This action is one in the nature of a creditor's bill to subject certain real property, situated in the county of Los Angeles, to the payment of a judgment, rendered in the superior court of said county in favor of the plaintiff and against the defendant A. D. Robinson (formerly Annie Dell Segno).

The plaintiff was the owner of a valid judgment against said defendant A. D. Robinson (formerly Annie Dell Segno) on the nineteenth day of October, 1923, the day on which there was conveyed to her the real property sought by this action to be charged with the payment of said judgment. Said judgment was docketed in the office of the clerk of the court in which it was rendered on the seventh day of April, 1919, and thereby became a valid lien upon all real property then owned by said defendant, or which she might thereafter acquire during the life of said lien, situated in said county and not exempt from execution.

On the nineteenth day of October, 1923, the defendant Harry T. Robinson was the owner of said real property. He had been arrested upon a charge preferred against him in the United States court and required a bail bond in the sum of $25,000. A friend of his by the name of R. E. Fitzgerald offered to go on his bond, but Robinson was informed by his attorney that he required two bondsmen in order to effect his release from imprisonment. His wife, the said defendant A. D. Robinson (formerly Annie Dell

Segno), was asked to act as the second bondsman. She replied that she had no property and could not justify as a bondsman. It was then suggested that the defendant Harry T. Robinson convey to his wife the real property described in the complaint herein for the purpose of enabling her to qualify as one of said bondsmen. This suggestion was acted upon and the defendant Harry T. Robinson by grant deed conveyed said real property to his wife in order that she might qualify as a bondsman upon the bond then required of him. On the same day said defendant A. D. Robinson, together with the said R. E. Fitzgerald, and one Olive S. Fitzgerald, executed said bond and the same was approved, and the defendant Harry T. Robinson was released from custody. In order for said bondsmen to qualify on said bond it was necessary for each of them to be worth the amount of said bond, and to make oath to that fact. In compliance with this requirement the said defendant A. D. Robinson, R. E. Fitzgerald and Olive S. Fitzgerald each subscribed and swore to the verification annexed to said bond, which verification, exclusive of its formal parts, was as follows: "Mrs. A. D. Robinson, R. E. Fitzgerald and Mrs. Olive S. Fitzgerald, being duly sworn, each for himself, deposes and says that he is a householder in said district, and is worth the sum of twenty-five thousand dollars, exclusive of property exempt from execution, and over and above all debts and liabilities."

At the time of the execution and delivery of said grant deed by the said defendant Harry T. Robinson to his wife, it was understood and agreed that it should not be placed of record in the office of the county recorder of said county, but upon the advice of the attorney for the defendant Harry T. Robinson, said deed was on the day of its date filed for record in the office of said county recorder. On the release of Mr. Robinson from jail he learned that said deed had been placed of record in the office of said county recorder. He immediately took steps to make different arrangements for his bail bond. The result of said action on his part was that a day or two after the execution of said deed, Mrs. Robinson, at the request of her husband, conveyed said real property to defendant Thomas D. Shannon, and the latter was substituted as a bondsman in the place of Mrs. Robinson. Shannon was a friend of Harry T. Robinson and said

conveyance was made to him in order that he might be able to qualify as one of Robinson's bondsmen. It appears that the reason the defendant Harry T. Robinson directed his attorney not to record the deed to his wife was that he knew of plaintiff's judgment and he did not wish to make himself liable for its payment. The court found the foregoing facts, and also "that no other consideration passed from the said A. D. Robinson to the said Harry T. Robinson for the said real property at the time of the conveyance of the real property, except as set forth in finding II above (finding III deals with the facts and circumstances surrounding the giving of the bail bond and the conveyance of said real property to the said A. D. Robinson for the purpose of qualifying her to become a surety on said bail bond, as related above), it being understood and agreed at the time between the said Harry T. Robinson and the said Annie Dell Robinson, otherwise known as A. D. Robinson, that upon the exoneration of the bail bond aforesaid, the said real property should be reconveyed by the said A. D. Robinson to the said Harry T. Robinson." The court also found, finding XVI: "That the said deed made, executed and delivered by Harry T. Robinson to A. D. Robinson on the 19th day of October, 1923, is a valid deed given for a valuable consideration and vested title in fee to said property in A. D. Robinson." The trial court upon this finding rendered judgment in favor of the plaintiff and the defendants have appealed.

Appellants contend that Mrs. Robinson by the deed from her husband, dated October 19, 1923, took merely the naked legal title to the real property described therein and that respondent's judgment lien did not attach to said real property, or to any interest therein, and that the complete equitable title remained in the said appellant Harry T. Robinson. Appellants have cited the case of *Fulkerson* v. *Stiles*, 156 Cal. 703 [26 L. R. A. (N. S.) 181, 105 Pac. 966], and a large number of other cases decided by the appellate courts of this and other states in support of their foregoing contention. There can be no question but that the cases relied upon by the appellants correctly state the law applicable to the facts, as claimed by the appellants. In our opinion, however, the appellants have misconceived the legal effect of the facts as found by the court. Appellants

insist that Mrs. Robinson received nothing but the naked legal title to the real property conveyed to her by her husband, and that all the facts and circumstances surrounding the execution and delivery of the deed established that such was the intention of the parties to said deed. In this we think the appellants are in error. There is no dispute as to just what actually took place at the time the deed was executed and delivered. Mr. Robinson desired another bondsman. It was suggested that his wife act as such bondsman, and she replied that she had no property and could not, therefore, legally qualify as a bondsman. It was then decided by her and her husband that the latter would convey to his wife sufficient property so as to enable her to qualify as a bondsman on the $25,000 required of him. In order for her to qualify it was necessary that she be the actual owner of property equal to the amount of the bond. Not only was this required of her, but the further requirement of the law was that she should make affidavit to that fact. It is conceded that she made the required affidavit and swore that she was worth the amount of the bond—$25,000. She could not truthfully have made such an affidavit if she were merely the owner of the naked legal title to said property. The property was conveyed to her by her husband for the express purpose of qualifying her to act as such bondsman. Can it now be successfully contended by the parties to said deed that Mrs. Robinson took only a naked legal title to said real property? In order to so hold it would be necessary to disregard the uncontroverted evidence, not only of said parties, but of all witnesses who testified regarding said transaction. In *Fulkerson* v. *Stiles, supra,* community real property had been taken in the name of the wife, against whom the defendant held a judgment which he claimed became a lien upon said real property. In an action by the husband to quiet his title to said real property, both the husband and the wife testified that in taking title to said real property in the name of the wife, there was no intention to make a gift thereof to the wife, but it was done merely for the purpose of pleasing the wife. There was no evidence to the contrary and the court held that no title passed to the wife by such conveyance. Another case relied upon by appellants is *Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308]. In that case the controversy

was between the surviving husband and the heirs of the deceased wife over certain real property which stood in the wife's name at the time of her death. The court held that while the intent that the property should become the separate property of the wife might, "and possibly must, be inferred where there is no other evidence than that showing the mere direction by the husband (that the deed be made in the wife's name), it may also be shown not to have existed by any competent evidence. In the present case the evidence is held sufficient to sustain the finding that the husband did not intend to make a gift to his wife." Other cases are cited and relied upon by appellants. In a number of them the facts show that where property is paid for by one person and the title is taken in the name of another, the latter takes but the naked legal title, and he has not such an interest in said property to which judgment against him can attach. It is manifest that none of these cases reach the exact point involved in the present action. In none of these cases, nor in any others to which our attention has been called, or which we have been able to discover, has it been held, where the express intent of the parties to a deed to real property was to invest the grantee with an absolute title in fee to the property conveyed, that said grantee does not hold said title absolutely for all purposes, and that he does not have such an interest in said real property to which a judgment against said grantee would attach. We confess we have not been able to find any authority directly holding that an interest in real property, such as that acquired by Mrs. Robinson under the deed from her husband, is subject to the lien of a judgment rendered against the grantee named in said deed. But it seems illogical and contrary to well established principles of law to hold when the absolute legal title to real property is voluntarily transferred by the owner thereof to another that the grantor can complain of the results which naturally flow from his voluntary act.

It is suggested by appellants that the agreement of the parties that the deed from Robinson to his wife was not to be recorded, is strong proof that Robinson did not intend to make a deed to the property to his wife. Just what this agreement might imply, standing by itself, is not necessary for us at this time to determine, as the testimony of Robin-

son himself is that the reason that he did not want the deed recorded was that he knew of the judgment against his wife and did not wish to become responsible for it. He no doubt realized at the time he planned to execute and deliver the deed to his wife, that he was thereby vesting title in her to said property to which the respondent's judgment lien would attach. Under these circumstances, we hardly think that the agreement between Robinson and his wife that the deed should not be recorded is entitled to any great consideration.

A further contention is made by appellants that, if the property was not conveyed to Mrs. Robinson in trust and thereby she acquired merely a naked legal interest therein, the evidence shows that it was conveyed to her as security, and for the purpose of indemnifying her against any loss that she might sustain by reason of her becoming a surety on her husband's bail bond. A complete answer to this contention is that there is not a scintilla of evidence to support this contention. Nothing was said by any of the parties at any time about indemnifying Mrs. Robinson against any loss she might incur as a bondsman on said bond, but on the other hand, the evidence is clear, convincing and uncontroverted that the sole purpose Robinson had in mind in executing and delivering the deed to his wife was to invest her with the title to property of a sufficient value that she would be able to qualify as one of his bondsmen.

We can see no escape from the conclusion that respondent's judgment against Mrs. Robinson attached to and became a lien upon the real property conveyed to her by her husband by the deed of date October 19, 1923. The present action is, therefore, maintainable and the judgment rendered therein in favor of the respondent should be and is hereby affirmed.

Shenk, J., Richards, J., Seawell, J., and Langdon, J., concurred.

PRESTON J., Dissenting.—I respectfully dissent from the views announced by Mr. Justice Curtis in the above cause. The undisputed facts disclosed by the findings are that the deed in question was made by Robinson to his wife solely to qualify her as a bondsman upon the bail bond required of him in the federal court. The understanding

was that when liability ceased on said bond the property was to be reconveyed. No consideration other than this called the transaction into being.

The opinion holds that inasmuch as the wife was required to take an oath that she was worth the amount of the bail over and above all her just debts and liabilities and property exempt from execution, she of necessity took the whole beneficial interest in the property under this deed and the husband must have so intended it.

But no contention is made that the transaction was anything other than as found by the court, nor that any rule of public policy condemned such an arrangement, nor that any rule of estoppel would prevent the husband from demanding the return of said property upon the cessation of liability upon said undertaking. This being true, no reason appears for holding that the wife received anything more than a qualified estate subject to defeat upon the release of her liability upon the bond. It should also be here noted that within two days after making this deed to her, her liability on this undertaking did cease, the defendant Shannon being substituted for her thereon. The said husband and wife conveyed the property covered by said deed to him to secure him for the assumption of said liability. The effect of this transaction has been noted in the opinion.

Whatever estate the wife may have received, if any, under this deed, it was, when she was released from said liability, divested out of her. The release from liability left her with only the bare, naked, legal title. The principles of law controlling here are well understood and everywhere recognized. " . . . the judgment . . . becomes a lien upon all the real property of the judgment debtor . . . owned by him at the time, or which he may afterwards, and before the lien expires, acquire. The lien continues for five years. . . . " (Code Civ. Proc., sec. 674.)

"The law is well settled that the lien of a judgment does not attach to a naked title, but only to the judgment debtor's interest in the real estate; and if he has no interest, though possessing the naked title, then no lien attaches." (*Iknoian* v. *Winter*, 94 Cal. App. 223 [270 Pac. 999]; see, also, *Riverdale Min. Co.* v. *Wicks*, 14 Cal. App. 526 [112 Pac. 896]; *National Bank of Pacific* v. *Western Pac. Ry.*

*Co.,* 157 Cal. 573 [21 Ann. Cas. 1391, 27 L. R. A. (N. S.)
987, 108 Pac. 676].)

"The interest which the lien of judgment affects is the
actual interest which the debtor has in the property, and a
court of equity will always permit the real owner to show
that the apparent ownership of another is or was not real;
and when the judgment debtor has no other interest except
the naked legal title, the lien of judgment does not attach."
(*Iknoian* v. *Winter, supra,* citing Freeman on Judgments,
4th ed., sec. 357, and Black on Judgments, 2d ed., secs. 420,
421.)

This principle has been expressed in various ways by the
courts. In *Eagle* v. *McKown,* 105 W. Va. 270 [142 S. E.
65, 67], the court says: "Where statute enactments do not
interfere, a judgment creditor can acquire no better right to
the estate of the debtor than the debtor himself had when
the judgment was recovered; and his lien will be limited to
the actual interest of the judgment debtor in the property."

Again: "The lien of a judgment is subject to prior liens,
and will not prevail over prior equitable claims on the same
property. It is subject to every equity which existed against
the land in the hands of the judgment debtor at the time
of the rendition of the judgment, and courts of equity will
protect the equitable rights of third persons against the
legal lien, and will limit such lien to the actual interest
which the judgment debtor has in the estate." (15 R. C. L.,
p. 798, sec. 255.)

In *Knaak* v. *Brown,* 115 Neb. 268 [51 A. L. R. 242, 212
N. W. 434], it is said: "Indeed, this bank by the filing of its
transcript, obtained a lien. But its lien attached only to
the actual interests of the judgment debtor, Van Valin, in
the mortgaged premises, and was subject to all existing
equities, whether of record or not. Judgment lien merely
conferred the right to levy upon the property in litigation
here to the exclusion of all other adverse interests subject to
the judgment. (Citing cases.) 'A judgment lien is, in
equity, but a charge on the title held by the defendant when
the lien attaches, or which is subsequently acquired. It can
only hold the legal estate subject to the equity. "It is well
settled that a judgment lien on the land of the debtor is
subject to every equity which existed against the debtor at
the rendition of the judgment; and courts of equity will

always limit the lien to the actual interest of the judgment debtor.'' . . . Thus, if through an innocent mistake the holder of a trust deed has released it as to more of the land than was intended, the lien of an intervening judgment is subject to the equitable right to have the release reformed, notwithstanding a recital in it of full payment.' 2 Freeman, Judgm. (5th ed.), p. 1997, sec. 950, and cases cited.''

Again, ''It is generally conceded that the lien of a judgment does not attach to land to which the judgment debtor has only a naked legal title, unaccompanied by any beneficial interest, the equitable and beneficial title being in another. A judgment lien attaches only to the interest which the debtor has in real estate, and if he has no actual interest, though possessing the legal title, then no lien attaches.'' (15 R. C. L., sec. 270, pp. 807, 808. See the same quotation in 117 Am. St. Rep., p. 782.)

Still more to the point and controlling in this case is the language found in *Hunter* v. *Citizens' Sav. etc. Co.*, 157 Iowa, 171 [Ann. Cas. 1915C, 1019, 1020, 138 N. W. 476], as follows: ''But a judgment lien has no effect to create any property right in the judgment creditor. It does not attach to the land as distinct from the title held or obtained by the debtor. His lien simply gives him a prior right as against a general creditor to enforce his claim by levy upon and sale of the debtor's legal or equitable estate in the land, but he cannot seize, sell or acquire any greater interest than is owned by the debtor himself. If there be any equities, limitations, or conditions attaching to the debtor's title which would defeat it in the hands of the debtor himself, it would be subject to the same infirmities and liabilities in the hands of the purchaser under such levy. Even if the debtor has some real or apparent interest in land to which the lien is attached, yet if his title has been so qualified in the instrument creating it that it may be defeated or divested by a power intrusted to another, and it is in fact thereafter so defeated or divested, the lien falls with it, and the creditor cannot pursue the property in the hands of a third person who has acquired it through the exercise of that power. This is not only the reasonable rule, but is, we think, sustained by all the authorities. The thought will perhaps be more clear if we keep in mind the fact that a judgment lien does not attach to the land, but to the

judgment debtor's interest in it, and, if that interest be subject to any infirmity or condition by reason of which it is eliminated or ceases to exist, the lien attaching thereto ceases with it. (*Beaver* v. *Ross*, 140 Iowa, 154 [17 Ann. Cas. 640, 20 L. R. A. (N. S.) 65, 118 N. W. 287] ; *Thomas* v. *Kennedy*, 24 Iowa, 405 [95 Am. Dec. 740] ; *Bucknell* v. *Deering*, 99 Iowa, 548 [68 N. W. 825] ; *Holden* v. *Garrett*, 23 Kan. 98; *Shipe etc. Co.* v. *Repass*, 28 Gratt. (Va.) 716; *Sinclair* v. *Sinclair*, 79 Va. 40; *Snyder* v. *Martin*, 17 W. Va. 276 [41 Am. Rep. 670] ; *Scudder* v. *Voorhis*, 5 Sandf. (7 N. Y. Super. Ct.) 271.) Applying this principle, the New York court in *Moore* v. *Pitts*, 53 N. Y. 86, where a lien was sought to be enforced against one Hall, says: 'It is obvious that the lien of Gilman's judgment could only attach to such estate as Hall had in the premises. If that estate was subject to be divested by the breach of any condition subsequent, any such breach that would divest the estate would of necessity destroy the lien.' See, also, *Ackerman* v. *Gorton*, 67 N. Y. 63; *Rose* v. *Hatch*, 125 N. Y. 427 [26 N. E. 467] ; *Leeds* v. *Wakefield*, 10 Gray (Mass.), 514; *Smyth* v. *Anderson*, 31 Ohio St. 144; *Baker* v. *Copenbarger*, 15 Ill. 103 [58 Am. Dec. 600] ; *Wetmore* v. *Midmer*, 21 N. J. Eq. 242; *Morse* v. *Hackensack Sav. Bank*, 47 N. J. Eq. 279 [12 L. R. A. 62, 20 Atl. 961] ; *Mayo* v. *Merritt*, 107 Mass. 505.''

Under the doctrine of these cases and particularly under the doctrine last above cited, whatever beneficial interest the wife may have received under this deed was subject to divestment upon her release from liability on said undertaking. This liability admittedly ceased before this action was begun; therefore, any beneficial estate she may have held fell upon the happening of that event and with it fell the lien, if any ever existed, of the judgment in question. It is, therefore, my view that the judgment of the court below should be reversed.