[Civ. No. 7651. First Appellate District, Division One.—March 9, 1931.]

B. D. McALVAY, Respondent, v. THE CONSUMERS' SALT COMPANY (a Corporation) et al., Appellants.

Newby & Newby and Dee Holder for Appellants.

Harry M. Irwin and Andrew H. Rose for Respondent.

THE COURT.—The plaintiff brought the above action to quiet title to 225,000 shares of the capital stock of defendant corporation and to compel the issuance to him of a certificate therefor. The complaint alleged the ownership of the stock to be in plaintiff, and that defendant B. C. Stockwell, to whom a certificate therefor had been issued by defendant corporation, claimed an interest therein, which was without right. The defendants by their answer denied the material allegations of the complaint, and admitted that defendant B. C. Stockwell claimed an interest in the stock, which they alleged to be the full ownership thereof. The action was tried on these issues.

The court found plaintiff to be the owner of the stock and that B. C. Stockwell (who will be hereinafter referred to as the defendant) had no interest therein and wrongfully withheld the certificate mentioned. Judgment was entered quieting plaintiff's title as against the defendants, and requiring the corporation (hereinafter referred to as the company) to issue a new certificate to the plaintiff.

The defendant since 1901 has been the wife of V. E. Stockwell, and R. P. Greenleaf, hereinafter mentioned, is defendant's mother. On June 18, 1925, plaintiff recovered a judgment in the Superior Court of Los Angeles County against V. E. Stockwell for $16,000 and costs. The judgment was docketed on June 19, 1925. On September 25, 1925, an execution issued thereon, pursuant to which the sheriff of that county, according to his return, levied upon all of the interest of V. E. Stockwell in and to the 225,000 shares of the capital stock of the Consumers' Salt Company, evidenced by certificate number 40, issued to and standing in the name of B. C. Stockwell and on November 17, 1925, sold the same to the plaintiff herein. The stock in question was formerly held by a corporation called the Crystal Salt Company, which owned a total of 300,000 shares of the company represented by certificate number 14. Some time before September 27, 1918, C. B. T. Jones recovered a judg-

ment in the Superior Court of Los Angeles County against the Crystal Salt Company for $5,250 and costs, and on November 7, 1918, the sheriff of that county, under an execution issued in the action, caused the above 300,000 shares to be sold. The court in the present action found " . . . that at said sale said 300,000 shares were purchased in the name of R. P. Greenleaf . . . ; that thereafter, to wit, on June 30, 1919, said certificate number 14 for 300,000 shares of the capital stock of defendant Consumers' Salt Company was canceled, and certificate number 36 for said 300,000 shares of the capital stock of defendant Consumers' Salt Company was issued to R. P. Greenleaf . . . ; that thereafter, to wit, on August 13, 1923, said certificate number 36 was canceled, and certificate number 38 for 75,000 shares of said stock was issued to C. L. Mulholland, and certificate number 39 for 225,000 shares of said stock issued to said R. P. Greenleaf . . . ; that on July 9, 1925, said certificate number 39 for said 225,000 shares was canceled, and certificate number 40 for said 225,000 shares was issued on said date to defendant B. C. Stockwell . . . ; that at all times while said certificate number 39 was outstanding said 225,000 shares, which are evidenced by said certificate number 39, were owned by V. E. Stockwell. . . . '' The court also found that these shares were not owned by R. P. Greenleaf or B. C. Stockwell at any time, and that on the date of the execution sale thereof to plaintiff the same were owned by V. E. Stockwell.

Plaintiff claims that notwithstanding the stock was purchased in the name of Mrs. Greenleaf and subsequently transferred by her to defendant, it was at all times the community property of the latter and V. E. Stockwell; while defendant claims the same as her separate property acquired by gift from her mother.

As grounds for the appeal it is contended that the findings and judgment in favor of plaintiff are unsupported; that upon the findings made and as the legal effect of the execution sale of the stock to Mrs. Greenleaf judgment should have been entered for the defendants; that in equity and good conscience plaintiff is not entitled to any relief, and that the court erred in the admission and rejection of evidence, and abused its discretion in permitting plaintiff to introduce evidence out of order.

The evidence shows that in 1918 V. E. Stockwell and C. L. Mulholland were respectively the president and general manager and director of both the Consumers' Salt Company and the Crystal Salt Company. In October of that year while such officers they purchased the judgment held by C. T. B. Jones against the Crystal Salt Company, the consideration being $2,500 in cash, furnished by Mulholland, and a house and lot which V. E. Stockwell caused to be transferred to Lillian P. Jones. By agreement between the purchasers the judgment was assigned to Mrs. Greenleaf. Mulholland testified that the transfer to her was due to a suggestion by Stockwell, who said "It would not look good for us as officers of the company to take that judgment in our names. Let us take it in Mrs. Greenleaf's name." The payment by Mulholland was represented by a check made payable to Mrs. Greenleaf, which check was delivered to Stockwell; both the payee and Stockwell indorsed the check and the latter cashed the same. With the proceeds Stockwell purchased a cashier's check for the same amount payable to Mrs. Greenleaf, which he indorsed as her attorney-in-fact. This check with the deed to the real property mentioned was placed by him in escrow, and was ultimately exchanged for the assignment of the judgment. Subsequently an attorney, acting under Stockwell's instructions, caused the execution to issue on the judgment, and on November 13, 1918, bid in the stock at the execution sale in the name of Mrs. Greenleaf. The latter, who was about seventy years of age and a widow, had since her husband's death in 1901 made her home with the Stockwells. She paid nothing for her board or room, and, so far as defendant could recall, had not owned or possessed any property other than the stock in question during that period. In 1905 she executed to V. E. Stockwell her general power of attorney, and took no part in the purchase of the Jones judgment or the execution sale thereunder, nor was the certificate number 36 for the stock issued in her name or received or seen by her, the same being receipted for and retained by Stockwell. It further appears that on August 13, 1923, Stockwell and Mulholland, in the absence of Mrs. Greenleaf and without consulting with her, divided the 300,000 shares represented by certificate number 36, whereupon 75,000 shares thereof were issued to Mulholland, and

certificate number 39 for the 225,000 shares issued in the name of Mrs. Greenleaf. At this time certificate number 36 was indorsed for cancellation by Stockwell, and thereupon the latter, acting as secretary, and Mulholland, acting as president of the company, issued said certificate number 39, which was received and receipted for by Stockwell. The latter voted the stock at a subsequent stockholders' meeting, at which Mrs. Greenleaf was elected a director of the company, but during the time the stock stood in her name she attended none of the meetings of the company, being represented thereat by Stockwell. It appears, however, that when certificate number 40 was issued to defendant certificate number 39 was personally indorsed by Mrs. Greenleaf. The house and lot referred to was purchased by Stockwell from Mrs. Julia Norton on November 6, 1917, the consideration therefor being an unsecured note for $1,000 executed by Stockwell and the defendant, which note Stockwell subsequently paid. According to Mrs. Norton the deed was prepared by Stockwell, who read the same to her before its execution, stating that the name of the grantee therein was V. E. Stockwell. The record of the notary public before whom the deed was acknowledged shows, however, that the grantee originally named therein was B. C. Stockwell, but that this name was subsequently changed on the notarial record to Nellie B. Jones. It further appears from the deed that the name of the original grantee was erased therefrom and Mrs. Greenleaf's name substituted. According to Stockwell he made the change in the deed with Mrs. Norton's consent; but the latter testified that she knew nothing of Mrs. Greenleaf until several months after the execution, and that no change was made in the name of the grantee in her presence or with her knowledge. As stated, a deed to the same property was executed to Lillian P. Jones by Mrs. Greenleaf in October, 1918. It is also claimed by defendant that the amount furnished by Mulholland was loaned to Mrs. Greenleaf; but it is clear that no note or security therefor was asked or given, and Mulholland denied that such loan was made. It is clear from Mrs. Greenleaf's testimony that her knowledge of any of these transactions was of the vaguest description. She never saw the property acquired from Mrs. Norton, or the assignment of the Jones' judgment, or knew its amount. The stock was received and

held by Stockwell, and with one exception indorsed by him. It was also voted by him at all the meetings of the company. Furthermore, Mrs. Greenleaf proved to be almost wholly unfamiliar with the facts of the acquisition of the Jones judgment, and her lack of knowledge of the other transactions described tends strongly to support the conclusion that she was not the real party in interest.

The reason advanced for her lack of knowledge is the fact that she had given her power of attorney to Stockwell, in whom, according to her testimony, she had full confidence. The power was given in 1905; but it sufficiently appears that she had no property or business; and the inference that its purpose was to enable Stockwell to transact business under her name when convenient is not unreasonable, and the conclusion that such was the fact, and that although the stock was purchased in her name it was Stockwell's property and held for his benefit is fairly supported by the evidence.

The judgment recovered by plaintiff against Stockwell was docketed on June 19, 1925, and on July 9, 1925, the stock was transferred to defendant. As stated, she claimed that the same was a gift from her mother. There was, however, no documentary evidence supporting this claim; and being a transfer of personal property there was no presumption that the title vested in her as her separate property, as the provision of section 164 of the Civil Code (Stats. 1897, p. 63; Stats. 1917, p. 827; Stats. 1923, p. 746) that "whenever any property is conveyed to a married woman by an instrument in writing the presumption is that the title is vested in her as her separate property" had reference to transfers of real property only (*Booker* v. *Castillo*, 154 Cal. 672 [98 Pac. 1067]; *Stafford* v. *Martinoni*, 192 Cal. 724 [221 Pac. 919]). The stock therefore was presumptively community property (*Estate of Pepper*, 158 Cal. 619 [31 L. R. A. (N. S.) 1092, 112 Pac. 62]), notwithstanding it stood in defendant's name (*Fennell* v. *Drinkhouse*, 131 Cal. 447 [82 Am. St. Rep. 361, 63 Pac. 734]; *Rowe* v. *Hibernia etc. Soc.*, 134 Cal. 403 [66 Pac. 569]; *Bashore* v. *Parker*, 146 Cal. 525 [80 Pac. 707]; *Hammond* v. *McCullough*, 159 Cal. 639 [115 Pac. 216]; *Stafford* v. *Martinoni*, *supra*). While such presumptions are disputable (*Thompson* v. *Davis*, 172 Cal. 491 [157 Pac. 595]), they

may nevertheless outweigh the evidence adduced against them (*Pabst* v. *Shearer,* 172 Cal. 239 [156 Pac. 466]) ; and when controverted by evidence, direct or indirect, an issue of fact is raised which it is the duty of the trial court to determine as in other cases (*Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308]) ; and notwithstanding such evidence a presumption will support a finding made in accordance therewith (*Moore* v. *Gould,* 151 Cal. 723 [91 Pac. 616] ; *Estate of Wiechers,* 199 Cal. 523 [250 Pac. 397] ; *Grantham* v. *Ordway,* 40 Cal. App. 758 [182 Pac. 73] ; *Hibernia Sav. & Loan Society* v. *DeRyana,* 210 Cal. 532 [292 Pac. 632]).

Defendant contends that no facts were found which contravene the finding that the stock was purchased in the name of Mrs. Greenleaf, and that the legal effect of the purchase was to vest ownership in her. This transaction took place on November 13, 1918, and there was no express finding that Stockwell owned the stock previous to August 13, 1923, the date when certificate number 39 was issued, the finding being that at all times while this certificate was outstanding he was the owner of the stock evidenced thereby. The court also found that it was not true that the stock was owned by Mrs. Greenleaf until July 19, 1925, as alleged by defendant, or at all.

While an appellate court must give a liberal construction to findings in support of the judgment (*Haight* v. *Haight,* 151 Cal. 90 [90 Pac. 197] ; *Adler* v. *Sawyer,* 40 Cal. App. 778 [181 Pac. 817]), and, as urged by respondent, these findings might be so construed, nevertheless we agree with appellant that an express finding on the question of ownership at the time of the purchase should have been made. However, under section 4¾ of article VI of the Constitution and section 956a of the Code of Civil Procedure we have the power in disposing of appeals to make findings. As stated the evidence amply supports the conclusion that, although the stock in question was purchased in the name of Mrs. Greenleaf it was the property of Stockwell, and was held by her for his benefit and we so find.

The record shows that $500 was bid for the 302,000 shares sold under the execution issued on the Jones judgment, and that Stockwell's interest in the 225,000 shares was purchased by plaintiff for $50 under the execution issued on the latter's judgment. Defendant claims that the

price paid by plaintiff was so inadequate as to render the transaction unconscionable, and that he should for that reason be denied equitable relief.

It has been held that a court of equity will not lend its aid to enforce a sale of property under execution where the disproportion between the value of the property sold and the sum paid for it is so great as to shock the conscience (*Mississippi etc. R. Co.* v. *Cromwell*, 91 U. S. 643 [23 L. Ed. 367]; *Randolph's Exr.* v. *Quidnick Co.*, 135 U. S. 457 [34 L. Ed. 200, 10 Sup. Ct. Rep. 655, see, also, Rose's U. S. Notes]). The total number of shares issued by the company does not appear, and the only direct evidence of the value of the stock in litigation was Stockwell's testimony that it was worth $150,000. As against this, however, was evidence that the business showed a deficit for the year ending June 30, 1925, and that the net profits for the following year approximated but $2,200. In addition, Stockwell's testimony was evasive and in many respects contradictory, and the weight to be given thereto was a question for the trial court (Code Civ. Proc., sec. 1847). There was no suggestion of any irregularity in the conduct of the sale, and no motion was made to vacate it. ■ While inadequacy of price is a circumstance to be considered (*Odell* v. *Cox*, 151 Cal. 70 [90 Pac. 194]), mere adequacy, however great, does not of itself furnish a ground for setting aside such a sale (*Rauer* v. *Hertweck*, 175 Cal. 278 [165 Pac. 946]; *Bock* v. *Losekamp*, 179 Cal. 674 [179 Pac. 516]; *Baldwin* v. *Brown*, 193 Cal. 345 [224 Pac. 462]). No fraud and no unfairness except as to the amount paid is urged against the plaintiff, and the testimony was not such as to compel the finding that the price paid rendered the transaction unconscionable. Such was not the view of the trial court, and no reason appears for disturbing its conclusion.

■ Complaint is also made that Mulholland was permitted over objection to relate conversations with Stockwell at times when neither the defendant nor Mrs. Greenleaf was present. Several of the conversations related to the financial and other arrangements which led to the purchase of the Jones judgment and the sale thereunder. In a subsequent conversation a division of the stock was discussed, following which the 75,000 shares above mentioned were transferred to Mulholland. The conversations were parts

of equivocal transactions relevant and material to the issues and explanatory thereof. Taken in connection with the conduct of the parties to the transactions they tended to show that Stockwell rather than Mrs. Greenleaf was the owner of the stock, and this testimony was properly admitted (22 Cor. Jur., Evidence, secs. 544, 548, pp. 453, 458; Wigmore on Evidence, sec. 1772).

█ The judgment-roll in plaintiff's action against Stockwell was admitted in evidence. The witness Mulholland was permitted to testify that he and Stockwell were officers of the salt companies in 1918, and the defendant was questioned by plaintiff respecting her mother's property. This evidence was also objected to by appellants. Although the entry of this judgment and the issuance of execution thereon were admitted by appellants the admission of the judgment-roll in evidence, if erroneous, was not prejudicial, and the testimony of Mulholland was relevant to the issues.

Nor is there any merit in the contention that evidence of the circumstances under which the Norton deed was executed was incompetent, or that either Stockwell or the defendant was subjected to improper cross-examination.

█ Testimony offered by Stockwell that he intended and understood the transfer from Mrs. Greenleaf to vest the stock in the defendant as her separate property, and that he made no claim thereto as community property, was rejected. This ruling is also assigned as error. While testimony as to a party's intention has been held to be competent (*Horton* v. *Winbigler,* 175 Cal. 149 [165 Pac. 423]; *Gilmour* v. *North Pasadena etc. Co.,* 178 Cal. 6 [171 Pac. 1066]; *Parsons* v. *Robinson,* 206 Cal. 378 [274 Pac. 528]), here the witness had previously testified that from the time of the purchase of the stock to the date of the trial he neither had nor claimed any interest in the stock. In view of this testimony the ruling, if erroneous, was not prejudicial.

█ The order of proof was a matter within the sound discretion of the trial court (Code Civ. Proc., sec. 2042), and no abuse of discretion in this respect is disclosed by the record.

█ As urged by appellant, plaintiff at the execution sale of the stock acquired the right, title and interest of Stockwell therein and no more (Code Civ. Proc., sec. 699;

*Widenmann* v. *Weniger*, 164 Cal. 667, 672 [130 Pac. 421]); and in an action to quiet title must recover on the strength of his own title and not upon the weakness of the title of his adversaries (*Di Nola* v. *Allison*, 143 Cal. 106 [101 Am. St. Rep. 84, 65 L. R. A. 419, 76 Pac. 976]; *Sears* v. *Willard*, 165 Cal. 12 [130 Pac. 869]). Also where a plaintiff claims under an execution sale he must show as against a stranger to the judgment that the judgment debtor had title or possession at the date of the lien or execution sale (*Robinson* v. *Thornton*, 102 Cal. 675, 681 [34 Pac. 120]; *Reilly* v. *Wright*, 117 Cal. 77 [48 Pac. 970]).

Appellants further claim that plaintiff being at most a subsequent creditor of Stockwell, is not under the facts one of the class who could attack the transfer to Mrs. Greenleaf. It is the general rule that the only creditors who can complain are those who were creditors at the time of the alleged fraudulent transfer, or those subsequent thereto who were intended to be defrauded; but to make a voluntary conveyance void as to subsequent creditors it must be made with the intent of fraudulently preventing them from enforcing their claims (*Bush & Mallett Co.* v. *Helbing*, 134 Cal. 676 [66 Pac. 967]; *Franck* v. *Moran*, 36 Cal. App. 32 [171 Pac. 841]). Otherwise subsequent creditors cannot complain (*Kane* v. *Desmond*, 63 Cal. 464; *Scales* v. *Holje*, 41 Cal. App. 733 [183 Pac. 308]). But it is also the rule that though the nominal title to property be conveyed to another, it is nevertheless liable for the debts of its owner (*Scott* v. *Keane*, 87 Md. 709 [42 L. R. A. 359, 40 Atl. 1070]; *Wetherill* v. *Canney*, 62 Minn. 341 [64 N. W. 818]; *McKey* v. *Cochran*, 262 Ill. 376 [104 N. E. 693]; *Spencer* v. *Davis*, (Tex. Civ. App.) 298 S. W. 443; *Jamison* v. *Mississippi etc. Trust Co.*, (Mo.) 207 S. W. 788; *Ward* v. *Marie*, 73 N. J. Eq. 510 [68 Atl. 1084]; *Benedict* v. *Benedict*, 261 Pa. St. 117 [104 Atl. 581]; *Menken Co.* v. *Brinkley*, 94 Tenn. 721 [31 S. W. 92]), upon the principle that one cannot be the equitable owner of property and still have it exempt from his debts (27 Cor. Jur., Fraudulent Conveyances, sec. 344, p. 600; *McColgan* v. *Magee, Inc.*, 172 Cal. 182 [Ann. Cas. 1917D, 1050, 155 Pac. 995]). And the rule applies to subsequent as well as to existing creditors (*McKey* v. *Cochran, supra; Williams* v. *Kemper*, 99 Minn. 301 [109 N. W. 242];

*Petty* v. *Moore's etc. Sanitarium,* 110 Va. 815 [19 Ann. Cas. 271, 27 L. R. A. (N. S.) 800, 67 S. E. 355]; 27 Cor. Jur., Fraudulent Conveyances, *supra*), and to both real and personal property (*Wetherill* v. *Canney, supra*). As the court said in *Rives* v. *Stephens,* (Tex. Civ. App.) 28 S. W. 707, 708: "If a conveyance be made with no intention that the title shall pass, or with the understanding that the grantee will hold in trust for the grantor, subsequent as well as prior creditors can subject the property to the payment of their debts the same as other property of the *cestui que trust.*" And the doctrine does not depend upon the fraudulent intent of any party connected with the transaction (*McColgan* v. *Magee, Inc., supra*).

 In the present case it is clear that notwithstanding the stock was purchased in Mrs. Greenleaf's name it was Stockwell's property and held for his use and benefit. While the legal title was vested in Mrs. Greenleaf she was under no duty except to convey it to the person ultimately entitled. Being merely a passive trust the interest of the *cestui que trust* was subject to seizure and sale under execution (23 Cor. Jur., Executions, sec. 84, p. 343), as, under the rule in California, all interests in property, whether legal or equitable, which are not exempt by law are liable to be so taken and sold (Code Civ. Proc., sec. 688; 15 Cal. Jur., Levy and Seizure, secs. 24, 27, pp. 1015, 1018; *Kennedy* v. *Nunan,* 52 Cal. 326; *Le Roy* v. *Dunkerly,* 54 Cal. 452; *King* v. *Gotz,* 70 Cal. 236, 241 [11 Pac. 656]); and the defendant not being a *bona fide* purchaser, stands in no better position than her transferor (*Eversdon* v. *Mayhew,* 65 Cal. 163 [3 Pac. 641]; *California etc. Fruit Assn.* v. *Stelling,* 141 Cal. 713 [75 Pac. 320]).

 In this connection defendant contends that the legal title to the stock was vested in her and not in the plaintiff, and that consequently an action to quiet title will not lie, citing *Aalwyn's Law Institute* v. *Martin,* 173 Cal. 21 [159 Pac. 158], and other cases. It is the general doctrine in California that the owner of an equitable title cannot maintain an action to quiet title against the owner of the legal title, the cases cited holding that a complaint containing only the usual averments in such an action is insufficient as against the owner of the legal title. Among the reasons

for the rule the cases state that an allegation or finding of ownership in the plaintiff is not sustained by proof that the defendant owns the legal title subject to the equity in the plaintiff (*Robinson* v. *Muir*, 151 Cal. 118 [90 Pac. 521]; *Gray* v. *Walker*, 157 Cal. 381 [108 Pac. 278]); also that it would be unfair to permit the owner of equities to procure a judgment based upon his adversary's fraud without setting up the facts constituting the fraud (*Aalwyn's Law Institute* v. *Martin, supra*). In the present case, however, the evidence shows that the stock was purchased on November 13, 1918, at which time under the laws of this state the husband was the sole owner of all community property, the wife having no present vested interest therein (*Stewart* v. *Stewart*, 204 Cal. 546 [269 Pac. 439]); and the cases hold that notwithstanding its transfer to the wife no title, legal or equitable, vested in her, but the same at once vested in the husband (*Peiser* v. *Griffin*, 125 Cal. 9 [57 Pac. 690]; *Osborn* v. *Mills*, 20 Cal. App. 346 [128 Pac. 1009]; *Mitchell* v. *Moses*, 16 Cal. App. 595 [117 Pac. 685, 687]). Accordingly such property, though it stands in the name of the wife, could be taken in satisfaction of an execution against the husband (*Schuyler* v. *Broughton*, 70 Cal. 282 [11 Pac. 719]), and the purchaser at the execution sale acquired all the right, title and interest of the husband therein (Code Civ. Proc., secs. 698, 699). Furthermore, the right of a husband to maintain an action to quiet his title to community property against the wife has been frequently upheld (*Osborn* v. *Mills, supra; Fanning* v. *Green*, 156 Cal. 279 [104 Pac. 308]; *Bollinger* v. *Wright*, 143 Cal. 292 [76 Pac. 1108]; *Hammond* v. *McCollough*, 159 Cal. 639 [115 Pac. 216]), as the court said in *Mitchell* v. *Moses, supra*, the two cases last cited: " . . . established the rule that the husband or one claiming under him may maintain an action to quiet title against the wife or one claiming under her where title to community property has been taken in her name".

The above authorities, we think, fully sustain plaintiff's right to maintain the present action.

The evidence sufficiently supports the findings, and no error is shown which would justify a reversal of the judgment.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 6, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1931.