Frank M. McKey, Trustee, Appellant, *vs.* Florence E. Cochran *et al.* Appellees.

*Opinion filed February 21, 1914—Rehearing denied April 9, 1914.*

1. Trusts—*general rule where one party pays for land and another takes title.* As a general rule, where the purchase money for land is paid by one person and the title is taken in the name of another the latter is regarded as holding the title in trust for the one who paid the purchase money.

2. Same—*rule where husband pays for land and wife takes the title.* The purchase of land by a husband in the name of his wife will *prima facie* be presumed to be a gift or advancement to the wife; but such presumption may be supported or rebutted by proof of antecedent or contemporaneous facts, or by proof of acts or facts so soon after the purchase as to be fairly considered a part of the transaction.

3. Debtor and creditor—*when a conveyance by a debtor is a fraud upon creditors.* A conveyance of land by a debtor, to be held wholly or in part in trust for him, is a fraud upon creditors whether so intended or not, and the conveyance is void both as to existing and subsequent creditors, as the fraud is a continuing one.

4. Same—*when rule respecting conveyance by debtor in trust applies to a conveyance by third person to debtor's wife.* If the taking of the title in the name of the wife to land purchased with the money of a debtor is merely a colorable conveyance, under which she holds the title in secret trust for the debtor, the conveyance falls within the rule as to conveyances of land by the debtor in trust, and the conveyance is fraudulent as against creditors.

5. Fraud—*when bill by a trustee in bankruptcy is sufficient to support finding that transfers were colorable.* A bill by a trustee in bankruptcy to subject property standing in the name of the bankrupt's wife to the claims of his creditors, which charges actual fraudulent intent and constructive fraud and alleges that at the time of the adjudication in bankruptcy all of the premises were held by the bankrupt's wife in trust for the bankrupt and for his use and benefit, is sufficient to support a finding that the conveyances to the wife of the different portions of the premises were merely colorable and that the bankrupt was the beneficial owner.

Appeal from the Circuit Court of Cook county; the Hon. John Gibbons, Judge, presiding.

Rice & O'Neil, for appellant.

Spencer Ward, for appellees.

Mr. Chief Justice Cooke delivered the opinion of the court:

Appellant, Frank M. McKey, trustee of the estate of Smith H. Cochran, bankrupt, filed his bill of complaint in the circuit court of Cook county against Florence E. Cochran and others, seeking to recover two pieces of real estate which it was alleged were conveyed to Florence E. Cochran during the year 1905 in order to defraud creditors of her husband, Smith H. Cochran, the bankrupt. Issues were joined and the case was referred to a master. The hearing before the master established the following facts:

In the early part of the year 1905 Smith H. Cochran, a resident of Chicago, received from the estate of an uncle, who had died in the State of California, assets and property of the value of $21,000. Cochran was at that time, and had been for several years theretofore, engaged in the undertaking business in Chicago. He conducted his business in a building located on lot 4 of block 13, in Ravenswood, an addition to Chicago, and also occupied a part of the building as a residence. These premises were owned by William E. Clow and were leased to Cochran. In January, 1905, Cochran, together with his wife, went to California to receive his distributive share from his uncle's estate, and on February 27, 1905, he wrote the following letter to Spencer Ward, an attorney practicing in Chicago:

"*Dear Ward*—Please find draft for $3200 for J. B. Clow & Sons for the property, 50 feet, where my business is, as we talked it over. They told me there was a mortgage of $3300 at five per cent, etc., and I could take it up any time. Please look into the matter carefully so the property will not cost over $6500 all told, interest, etc. (Ask Oscar about the rent.) Will you kindly satisfy yourself that the title is O. K. and make the regular charge for same? I will send under separate cover a draft for $400. Make the best settlement with the National Casket Company you can. ·

S. H. Cochran."

The settlement with the National Casket Company referred to in this letter was with reference to a claim for $2813.63 upon which the National Casket Company had in October, 1902, brought suit against Cochran in the circuit court of Cook county, and in compromise and settlement of which the attorney for the National Casket Company had agreed with said Ward, who was representing Cochran in the suit, to accept the sum of $375. When Cochran went to California to receive his distributive share of his uncle's estate his tangible property, consisting wholly of personalty, was of the value of between $400 and $500, in addition to which he had about $2000 of outstanding accounts which were good and collectible. The net income from his business amounted to $2500 per year, and his outstanding indebtedness, exclusive of his indebtedness to the National Casket Company, amounted to $4300. Upon receiving the draft for $400 Ward called upon the attorney for the National Casket Company and announced that he was ready to make the settlement which had been agreed upon, but the attorney for the National Casket Company refused to accept the sum offered, upon the ground that the agreement for a settlement had been made because his client thought that Cochran was "execution proof" but had since learned that he would receive considerable property from his uncle's estate. The suit finally, on October 6, 1910, culminated in a judgment in favor of the National Casket Company against Cochran for $3848.06. About the same time that Cochran wrote the letter to Ward above set out he also wrote a letter to Oscar R. Smith, whom he had left in charge of his business during his absence, in which he advised Smith that he had sent Ward a draft with which to purchase the property in which the undertaking business was being conducted and directed Smith to call upon Ward and see that everything was all right. Upon receipt of this letter Smith called upon Ward and advised him not to purchase the property in Cochran's

name but to take the title in Mrs. Cochran's name, because the National Casket Company was suing Cochran, a man named Schauchou was threatening suit, and the Hall Casket Company had obtained judgment against Cochran for $1000. Afterwards, on March 11, 1905, William E. Clow executed and delivered a warranty deed conveying to Florence E. Cochran said lot 4 subject to an encumbrance of $3300, and Ward thereupon turned over to Clow the draft which Cochran had sent him for that purpose. Thereafter, on March 31, 1905, Mahala C. Galloway conveyed to Florence E. Cochran lot 7 of block 12, in Ravenswood, for a consideration of $4000, of which the sum of $1000 was paid in cash and a promissory note and a trust deed upon said lot 7 were executed and delivered by Florence E. Cochran and Smith H. Cochran to secure the balance of the purchase price. The money used in making the $3200 payment upon the purchase price of said lot 4 and the $1000 payment upon the purchase price of said lot 7 was a part of the assets received by Smith H. Cochran from his uncle's estate.

Cochran returned from California in April, 1905, and within two years thereafter erected and completed a chapel, at a cost of at least $8000, on a portion of said lot 4, and a residence, at a cost of at least $9000, on said lot 7. The chapel is a two-story building of concrete, brick and stone, 115 feet long and 26 feet wide, having an office, private office, chapel and rest room and a loafing room on the first floor, and two bed-rooms, a bath room, a show room and a work room on the second floor. Ever since its completion it has been used by Smith H. Cochran in conducting his undertaking business. The residence property, since its completion, has been occupied by Cochran and his family as a home. Smith H. Cochran superintended and paid for the erection of the chapel and residence. Florence E. Cochran never had any bank account, and aside from small gifts of money from her mother at different times, has

had no means except moneys given her by her husband for household and living expenses. All the money used in constructing the improvements on lots 4 and 7 was taken from the funds received by Smith H. Cochran from his uncle's estate, except such sums as were obtained by loans upon the property.

On July 13, 1906, Florence E. Cochran and her husband conveyed to the Northwestern Elevated Railroad Company the west forty feet of said lot 4, and the consideration of $2500 was paid to Smith H. Cochran and was used by him in his business. On October 2, 1906, a trust deed on said lot 4 was given by Florence E. Cochran and her husband to George F. Kester to secure a note for $6000, due three years after date. This trust deed was afterwards released. In February, 1907, Cochran borrowed from Frank R. Thompson $6500, representing to Thompson's agent who negotiated the loan that his wife was building a house; that they required some money to complete the house and that he was attending to and taking care of the matter for her. To secure this loan Florence E. Cochran and her husband, on February 19, 1907, executed and delivered promissory notes and a trust deed upon said lot 7. Of the money borrowed from Thompson, $3082.50 was used to pay off the trust deed which had been given at the time lot 7 was purchased to secure the balance of the purchase price, and the remaining $3417.50 was deposited by Smith H. Cochran to his own credit in a bank. On November 3, 1909, the Rosehill Cemetery Company loaned to Florence E. Cochran $8000, to secure which she, together with her husband, executed promissory notes and a trust deed upon a portion of said lot 4 to the Chicago Title and Trust Company. Of the money borrowed from the Rosehill Cemetery Company, $1141 was paid upon an indebtedness owing by Smith H. Cochran to James C. Curtis & Co. for merchandise, and to secure the balance of this indebtedness Mrs. Cochran and her husband, on November

15, 1909, executed and delivered to Curtis & Co. a promissory note for $1000 and a trust deed upon a portion of said lot 4. While the testimony does not show affirmatively what disposition was made of the balance of the money borrowed from the Rosehill Cemetery Company, it was evidently used to pay the note of $6000 which had been given to Kester in 1906 and which became due in October, 1909, and which was secured by a trust deed upon said lot 4. After the erection of the chapel on said lot 4 the old building which was on the lot at the time it was conveyed to Mrs. Cochran was rented to various tenants, and up to the time of the bankruptcy proceedings against him Smith H. Cochran negotiated leases in his own name and collected all the rents from the tenants, but at no time did he account to his wife for any of the rents received from these premises.

By the end of the year 1906 Cochran had converted all the property received from his uncle's estate into cash, and aside from the money used in purchasing said lots 4 and 7 and in the erection of the buildings thereon, he paid out of these assets the judgment for $1000 obtained by the Hall Casket Company against him. He also, on May 27, 1905, purchased two other lots in the city of Chicago for $1700, paying $850 in cash and giving a trust deed to secure his note for the balance. He retained the title to these lots in his own name until the same vested, by operation of law, in appellant, McKey, as trustee of his estate. He also invested and lost about $1000 in the business of manufacturing concrete stone. The balance of the money received by him from his uncle's estate was used, from time to time, in his undertaking business. The taxes for the year 1905 on said lots 4 and 7 were paid in the name of Florence E. Cochran, and for the year 1906 such taxes were paid in the name of Smith H. Cochran. Both lots were sold for the taxes of 1907 and 1908, but were redeemed from the sale for the taxes of 1907 in the

name of Smith H. Cochran and from the sale for the taxes
of 1908 in the name of Florence E. Cochran. On June
29, 1910, certain creditors of Smith H. Cochran filed a
petition in the United States district court to have him
adjudged a bankrupt, and on October 24, 1910, he was
adjudged a bankrupt. The claims filed and allowed against
his estate, including the claim of the National Casket Com-
pany upon its judgment for $3848.06, are greatly in ex-
cess of the assets of his estate. On October 31, 1910,
Florence E. Cochran leased a portion of said lot 4 to
D. M. Carroll for a period of one year, with an option to
renew the lease for five years, at $100 per month. The
lease also contained an option giving Carroll the right to
purchase the premises for $15,000. On December 8, 1910,
a formal contract was entered into between Carroll and
Florence E. Cochran for the purchase of the premises, and
Carroll is able to purchase and is still desirous of pur-
chasing the property.

Upon this state of facts the master found that the
equities in the cause were with the complainant; that the
transactions whereby title to said lots 4 and 7 were taken
in the name of Florence E. Cochran were merely color-
able so far as the grantee was concerned, and were fraudu-
lent as respects the National Casket Company and other
creditors of Smith H. Cochran; that title was taken by
Smith H. Cochran in the name of his wife with the delib-
erate intention of hindering and delaying his creditors;
that he was the real party in interest, and that title was
taken and has been held in the name of his wife by Smith
H. Cochran for his own use and benefit; that McKey,
as trustee of Smith H. Cochran, bankrupt, is the benefi-
cial owner of said lot 4, except the west forty feet there-
of, and of said lot 7, subject to the trust deed upon lot 7
given to secure the loan made by Frank R. Thompson, and
subject to an estate of homestead to which Florence E.
Cochran and Smith H. Cochran are entitled in said lot 7;

also subject to the trust deed on said lot 4 given to secure the loan made by the Rosehill Cemetery Company, and the trust deed on the same lot to secure the indebtedness of $1000 due Curtis & Co.; also subject to a judgment for $159.37 in favor of C. F. and Bernard Reimenschneider against Florence E. Cochran and Smith H. Cochran, and subject to the contract between Florence E. Cochran and D. M. Carroll for the purchase by the latter of a part of said lot 4; and the master finds that in case said contract of purchase is carried out, McKey, as trustee, is entitled to the interests of said Florence E. Cochran and Smith H. Cochran in the proceeds thereof, after paying the outstanding claims and encumbrances thereon above mentioned.

When the master's report was filed in court Florence E. Cochran and Smith H. Cochran filed exceptions thereto. The court sustained the exceptions to the master's conclusions, and found from the facts above set forth that the conveyances to Florence E. Cochran were without fraud, in law or in fact, on the part of Smith H. Cochran; that Smith H. Cochran did not take the title in the name of his wife with the intention of defrauding the National Casket Company and other creditors out of their just demands; that the real estate in controversy was not at the date of the adjudication of bankruptcy held by Florence E. Cochran in trust for her husband and for his use and benefit, and that McKey, as trustee, did not become vested with any interest therein; that at the time of the conveyances to Florence E. Cochran, Smith H. Cochran, aside from any money involved in said conveyances, was wholly solvent and was possessed of and retained more than ample means, assets and property to discharge all of his then existing debts and obligations, and continued so solvent for a long time thereafter; that by said conveyances no creditor of Smith H. Cochran was hindered or delayed; that such conveyances were equitable and just, and that Flor-

ence E. Cochran in receiving said conveyances was acting without any intention of delaying or hindering her husband's creditors; that said conveyances constituted an advancement to and settlement upon his wife by Smith H. Cochran and did not constitute a secret or resulting trust in favor of him. The decree, after reciting these findings, dismissed the bill for want of equity at complainant's cost. This appeal has been prosecuted by Frank M. McKey, trustee, to reverse the decree of the circuit court.

Three grounds are urged for reversal and each of them is argued at some length. We deem it necessary to notice but one of them, viz., that the transfers of the properties in question were merely colorable and that Florence E. Cochran held them under a secret trust for the benefit of her husband, Smith H. Cochran. If this contention is clearly supported by the evidence the conveyances were fraudulent in law and void as to the creditors of Smith H. Cochran.

The general rule is, where the purchase money of land is paid by one person and the title taken in the name of another, such other person holds the title in trust for him who pays the purchase money. But the purchase of land by a husband in the name of his wife will *prima facie* be presumed to be an advancement or settlement and not a trust. This latter presumption may be either supported or rebutted by proof of antecedent or contemporaneous acts or facts, or by proof of acts or facts so soon after the purchase as to be fairly considered a part of the transaction. (*Goelz* v. *Goelz,* 157 Ill. 33.) A conveyance of real estate by a debtor to another, to be held wholly or in part in trust for him, is a fraud on creditors whether so intended or not, as it places beyond their reach a valuable right and gives to the debtor the beneficial enjoyment of what rightfully belongs to them. (*Moore* v. *Wood,* 100 Ill. 451; *Mitchell* v. *Sawyer,* 115 id. 650; *Beidler* v. *Crane,* 135 id. 92; *Bostwick* v. *Blake,* 145 id. 85.) In such a

case the conveyance is void as to existing and subsequent creditors. The fraud is a continuing one, and may actually operate as such as well in reference to debts contracted after as before the conveyance. (*Guffin* v. *First Nat. Bank,* 74 Ill. 259; *Jones* v. *King,* 86 id. 225; *Gordon* v. *Reynolds,* 114 id. 118; *Bostwick* v. *Blake, supra.*) If the conveyances to Florence E. Cochran were in fact colorable and it was intended that she should hold the property in secret trust for her husband, it cannot be contended that this case does not fall within the foregoing rule although Smith H. Cochran procured the conveyance to be made to her by another instead of making the conveyance himself. *Bostwick* v. *Blake, supra.*

We have set out at length the evidence produced before the master, and a perusal of it can leave no doubt that the conveyances to Florence E. Cochran were merely colorable and that she held the title in secret trust for her husband, who was the beneficial owner. It is quite evident that Smith H. Cochran furnished the whole of the money that was invested in these properties, as his wife had no money except that which she received from him. It is also evident that it was originally the intention of Cochran, in purchasing this property, to take the title himself. It was evidently at the suggestion of Smith, made to Cochran's attorney while Cochran and his wife were absent in the State of California, that the title was taken by Mrs. Cochran. Smith's advice was that this be done for the purpose of preventing three creditors,—one a judgment creditor, another a plaintiff in a suit then pending against Cochran, and the other a creditor who was threatening suit,—from being placed in a position where they could enforce the collection of their claims. Cochran did not see fit to testify. His wife was not called in his behalf nor did his attorney testify on this subject. The failure of Cochran to testify is significant. We can only conclude from the facts as presented, that while it was Cochran's intention to purchase

these properties for himself, he concluded to have the title taken in the name of his wife for the reasons given by Smith to Ward. While the actions of a husband or wife when dealing with the property of the other are not always subject to the general rules applicable to transac-. tions. between other persons, it is quite evident from the actions and attitude of Cochran from the time the negotiations were first pending for the purchase of this property down to the institution of the bankruptcy proceedings, that he regarded and treated this property as his own and that his wife did not attempt to exercise any acts of ownership or control over the property whatever. It is unnecessary to further review the evidence relative to these matters as it has already been fully set out.

Appellees contend that appellant is not entitled to this relief under his bill, claiming that there are no allegations in the bill under which proof of a colorable transfer could be made. The bill charges actual fraudulent intent and constructive fraud, and also alleges that all of the premises mentioned were at the time of the adjudication in bankruptcy of Smith H. Cochran held by the said Florence E. Cochran in trust for Smith H. Cochran for his use and benefit, and that he was at that time in some way or manner beneficially interested therein. This allegation is sufficient on which to base a finding that the transfers were colorable and that Smith H. Cochran was the beneficial owner.

The chancellor erred in sustaining the exceptions to the master's report and in dismissing the bill.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree in conformity with the findings of the master.

*Reversed and remanded, with directions.*