[No. 24617. Department One. January 31, 1934.]

J. VAN STEWART, *as Trustee in Bankruptcy, Appellant,*
v. FRANK S. TOWNSEND *et al., Respondents and
Cross-appellants,* THE BANK OF CALIFORNIA,
N. A., *Respondent.*

J. VAN STEWART, *as Trustee in Bankruptcy, Appellant,*
v. FRANK S. TOWNSEND *et al., Respondents.*[1]

*Bausman, Oldham, Cohen & Jarvis* and *James E. Newton,* for appellant.

*Grosscup & Morrow* and *Neal & Bonneville,* for respondents.

MITCHELL, J.—For a number of years prior to August 17, 1931, Townsend & Company, a domestic corporation, engaged in business as brokers in the purchase and sale of securities. Frank S. Townsend was

[1]Reported in 28 P. (2d) 999.

one of its principal stockholders, and was its president and active manager.

On June 22, 1929, he and his wife, by written instrument, created a trust agreement with the Bank of California, N. A., of Tacoma, as trustee, and deposited thereunder certain securities for the benefit of Charlotte and Donna Ruth Townsend, minor children of Mr. and Mrs. Townsend. Thereafter, on March 24, 1930, the trust agreement was modified so as to omit certain provisions of the original agreement reserving to Frank S. Townsend the power to withdraw any of the securities in the trust, and to omit the power reserved to him to revoke the trust.

On August 17, 1931, Townsend & Company was adjudicated a bankrupt by the United States district court for the western district of this state, northern division. The plaintiff in the present actions was chosen and qualified as trustee in bankruptcy of the insolvent corporation, and, by leave of court, has brought these actions.

At and prior to the adjudication in bankruptcy of the corporation, Frank S. Townsend was largely indebted to the corporation, and the first one of the two present actions was brought by the trustee against Frank S. Townsend and wife to recover judgment on the indebtedness.

Frank S. Townsend and wife, answering the complaint separately, denied any indebtedness on their part, and set up a cross-complaint against the corporation, the allegations of which were denied by replies. Ancillary to the action, the plaintiff caused a writ of garnishment to be served on the Bank of California, N. A., Tacoma. The bank answered that it had no funds or property of the defendants, and was not indebted to them or either of them. The answer of the

garnishee defendant was controverted on behalf of the plaintiff.

Immediately upon commencing the action in debt, a second one was commenced by the trustee in bankruptcy against Frank S. Townsend and his wife, their two minor children, Charlotte and Donna Ruth Townsend, and the Bank of California, N. A., Tacoma, to set aside the trust agreements, and for a decree that the assets of the trust be subjected to execution on any judgment recovered in the action in debt. The defendants appeared and filed answers, consisting of general denials and several affirmative defenses. The minors answered by their guardian *ad litem*. Appropriate replies were made by the plaintiff to the several affirmative defenses. By stipulation between the parties and consent of the trial court, the two actions were consolidated and tried without a jury.

In the first of the actions, findings, conclusions and judgment were entered for the plaintiff against Frank S. Townsend and the community composed of him and his wife. The garnishee defendant was dismissed out of the case, with costs against the plaintiff. The defendants Frank S. Townsend and wife have appealed from the judgment against them. The plaintiff has appealed from that portion of the judgment dismissing the garnishment action against the bank.

In the second of the actions, findings, conclusions and judgment were entered in favor of the defendants. The plaintiff has appealed.

By stipulation of the parties, the appeals in both cases have been consolidated and presented in one set of briefs in this court.

The appeal of Frank S. Townsend and his wife from the judgment against them in the first case presents no substantial controversy, other than with re-

spect to the facts relating to debits and credits in the account of Townsend & Company against Frank S. Townsend and the marital community composed of himself and his wife. A number of items are involved, concerning which a large amount of testimony was introduced, much of it conflicting. The testimony cannot reasonably be set out herein. Our examination of it satisfies us that it sustains the findings and judgment by a fair preponderance. The appeal of the plaintiff in this case from that portion of the judgment dismissing the bank as a garnishee defendant must be disposed of according to the disposition to be made of the trust agreements in the second suit, the judgment in which, we shall see presently, must be affirmed.

The trust agreements involved in the second action are too long to reasonably be set out here. At the date of the first agreement, June 22, 1929, Frank S. Townsend and his wife were fully solvent. The court found that, in good faith, they entered into the trust agreement with the Bank of California, N. A.; that:

"In accordance with the terms thereof, the defendants, Frank S. Townsend and Ruth F. Townsend, his wife, forthwith transferred and delivered over to the said defendant, The Bank of California, N. A., certain stocks, bonds and other property of the approximate value at that time of $65,000. In accordance with the terms of said trust agreement, the defendant, The Bank of California, N. A., took title, possession and control of said stocks, bonds and other properties above mentioned, for the use and benefit of the defendants, Charlotte and Donna Ruth Townsend, the minor children of Frank S. Townsend and Ruth F. Townsend.

"The said trust agreement provided that the defendant Frank S. Townsend had the right from time to time to remove and repossess himself of said stocks, bonds and other properties passing to The Bank of California, N. A., the Trustee, or which might come into the possession of said Trustee, and had the right

from time to time to redeposit securities and to deposit other securities which should upon deposit become subject to the terms of said trust agreement and the removal of securities by the grantor should have the effect of revoking the trust with respect to the securities so removed. The defendant Frank S. Townsend has never at any time exercised the right above stated of taking, removing and/or repossessing himself of any stocks, bonds or other properties held by The Bank of California, N. A., as Trustee aforesaid, nor the income or proceeds therefrom.''

In addition to these findings, it is a fact upon which appellant in this action bases one of its contentions that the trust agreement also provides:

''The Grantors may at any time cancel and rescind the same by giving written notice thereof to the Trustee; thereupon, the entire Trust Estate shall be delivered back to the Grantors.''

When the second instrument was executed, Frank S. Townsend and his wife were, and thereafter continued to be, insolvent, according to the finding of the trial court; and that, upon and after the execution of the second agreement, there was no repossession of the securities by Townsend and wife. There was a further finding and conclusion of the trial court that the second agreement was entered into in good faith, and that:

''The effect of this agreement was in no way to revoke or change the original trust agreement except that the grantor, Frank S. Townsend, did thereby relinquish and surrender a personal right of withdrawing from time to time securities under the original trust agreement and from revoking the trust with respect thereto. This right of revocation was a purely personal right of Frank S. Townsend and did not constitute property or estate to which his creditors were in any way entitled.''

The judgment followed the findings, and declared ''that the original trust agreement of June 22, 1929,

aforesaid, as modified by the subsequent agreement of March 24, 1930, is now in full force and effect."

An examination of the record, including the statement of facts, satisfies us that the findings and conclusions of the trial court are sustained and justified by a clear preponderance of the evidence.

The contention on behalf of the appellant that the trust agreement was made for the benefit of the grantors and consequently void as against the appellant trustee in bankruptcy, involves the consideration of Rem. Rev. Stat., § 5824, which is as follows:

"All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, shall be void as against the existing or subsequent creditors of such person."

By its terms, the statute covers contracts *made in trust for the use of the person making the same.* In this case, the instrument declares that the trust is created "for the equal benefit of the children" of the grantors, and the trial court found, upon a preponderance of the evidence, that it was so created in good faith when the grantors were fully solvent. Nevertheless, the appellant argues that, although the children of the grantors were the nominal beneficiaries, the trust was in legal effect made for the benefit of the grantors, because Frank S. Townsend retained the power of revocation, the power to direct the making of investments and of reinvestments, and also because no part of the trust property was to be distributed until after the death of Frank S. Townsend.

Some of the principal cases cited by appellant, wherein transfers were held to be void as to creditors, may be noticed. In *Stollenwerck v. Fourth National Bank,* 205 Ala. 548, 88 So. 659, there was a "separate, secret, and contemporaneous agreement whereby a val-

uable benefit was reserved to the assignor." In *American Trust & Savings Bank v. O'Barr,* 12 Ala. App. 546, 67 So. 794, the assignment to a bank by a contractor, though absolute in form, was under the evidence, without dispute, in reality given merely as security for an advancement already made, and others that might be made, to the assignor for carrying out his construction contract. Beyond that, he had a beneficial interest never really intended to be assigned. In *McKey v. Cochran,* 262 Ill. 376, 104 N. E. 693, a deed was held to be colorable merely, the title being taken by Cochran in the name of his wife with the *deliberate intention of hindering and delaying his creditors,* and that he was the real party in interest. It was so found and held, as a fact.

In *Vermillion v. First National Bank of Greencastle,* 59 Ind. App. 35, 105 N. E. 530, 108 N. E. 370, the instrument involved was a chattel mortgage on a stock of goods by the terms of which instrument the mortgagor remained in possession and continued the business. The doctrine of the case is that, to hold a transfer void as against creditors, the existence of a trust for the benefit of the grantor must be found as a fact, but, being found, the law draws the inference of fraud. In *Jamison v. Mississippi Valley Trust Co.,* 207 S. W. (Mo.) 788, the instrument creating the trust recited that the trust should continue for five years for the sole and separate use of the party of the first part, and "the trustee shall from time to time pay over to the party of the first part on his written order or receipt the net income of the trust estate."

These cases are not in point here, where the instrument declares on its face that the trust is created for the use and benefit of the children of the grantors, which instrument, together with other facts and cir-

cumstances, supports the finding that the trust created is *bona fide*.

Appellant cites 12 R. C. L. 549, to the effect that

"A power of revocation virtually leaves the property under the settlor's power, showing that he did not bona fide intend to put the property out of his reach."

The only case supporting the text is *Scott v. Keane*, 87 Md. 709, 40 Atl. 1070, 42 L. R. A. 359, where the owner of property made a voluntary settlement of it reserving a life estate to himself and providing that he may *revoke the settlement by a sale of the property for his own benefit*, etc.

Counsel also cite 27 C. J., p. 603, § 348, to the same general effect. Supporting cases for the text may be considered. *Blackwell v. Harbin*, 186 Ala. 531, 65 So. 35, involved a deed of which the court said:

"The power reserved was with the evident purpose to restore the beneficial interest to the grantor. There is no indication of intent to vest a benefit in, or to confer a benefit upon, any other person."

In *Tyler v. Tyler*, 126 Ill. 525, 21 N. E. 616, 9 Am. St. 642, the court said that the instrument "is, upon its face, plainly fraudulent, in that it attempts to secure the use of the property to appellee [grantor] to the exclusion of all others." In *Westfall v. Jones*, 23 Barb. (N. Y.) 9, the grantor Jones had been sued, whereupon he made and delivered the mortgage in question reserving to himself control over the same with power to have it assigned or foreclosed, if he should direct, or to be delivered up and cancelled if he should succeed in his defense to the pending suit against him. *Murray v. Riggs*, 15 Johns. (N. Y.) 571, involved an assignment to trustees to pay certain creditors and certain others that might be specified by the grantor, at such times and in such proportions as

might be directed, "and *in default of such direction, then in trust for the grantors,* etc."

In *Cannon v. Peebles,* 26 N. Car. 204, it was decided that the question whether or not the instrument involved was made with fraudulent intent was a question of fact properly submitted to the jury. In *Lang v. Lee,* 3 Rand. (Va.) 410, security was taken on a stock of merchandise that was left in the possession of the debtor who, under the terms of the instrument, had the power to sell and dispose of it as he thought proper. In *Tarback v. Marbury,* 2 Vern. 510, a deed had been made to trustees and their heirs in trust to sell and pay all of the grantor's debts, "with a power, nevertheless, *to himself* to mortgage such part of the estate as he should think fit."

The present case is controlled by the principles set out in a different line of authorities than those appellant relies on, some of which may be mentioned.

In *Jones v. Clifton,* 101 U. S. 225, an assignee in bankruptcy of Clifton brought a suit to set aside two deeds by which Clifton, in consideration of love and affection he bore his wife, conveyed to her certain property to have as her separate estate. Each deed contained a clause

" . . . reserving to himself the power to revoke the grant and assignment, in whole or in part, and to transfer the property to any uses he might appoint, and to such person or persons as he might designate, and to cause such uses to spring or shift as he might declare."

Discussing the power thus reserved and after finding in that case, as has been found in the present case, that there was no fraudulent intent on the part of the grantor, the court said:

"The powers of revocation and appointment to other uses reserved to the husband in the deeds in question do not impair their validity or their efficiency in trans-

ferring the estate to the wife, to be held by her until such revocation or appointment be made. Indeed, such reservations are usual in family settlements, and are intended 'to meet the ever-varying interests of family connections.' *Riggs v. Murray*, 2 Johns. (N. Y.) Ch. 565. . . . The only fraud asserted in argument to exist is constructive fraud arising from the reservation in question. But its presence in the deed, as is clear from all the authorities, does not tend to create an imputation upon his good faith and honesty in the transaction. *Huguenin v. Baseley*, 14 Ves. 273; *Coutts v. Acworth*, Law Rep. 8 Eq. 558; *Wollaston v. Tribe*, 9 id. 44; *Everitt v. Everitt*, 10 id. 405; *Hall v. Hall*, 14 id. 365; *Phillips v. Mullings*, Law Rep. 7 Ch. 244; *Hall v. Hall*, 8 id. 430; *Toker v. Toker*, 3 De G., J. & S. 486.

"As is very justly observed in the opinion of the court below, the insertion of the power of revocation and new appointment, so far from proving that the grantor contemplated a fraud upon his future creditors, tends to show the contrary. Should he revoke the settlements, the property would revert to him, and, of course, be liable for his debts; and should he exercise the power of appointment for the benefit of others, the estate appointed would be liable in equity for his debts."

In *Hill v. Cornwall & Bro.'s Assignee*, 95 Ky. 512, 26 S. W. 540, Cornwall conveyed property to trustees for the use and benefit of his daughter, with the proviso:

"That the party of the first part hereby reserves to himself full and all species of power to revoke each or any, or some or all of the uses hereby created, and to cause them to shift to other person or persons, *including himself*, as he may choose, or to cause new uses to spring to the use *of some other person or persons, including himself.*"

In upholding the trust as against the claims of creditors, the court said:

"It was executed nearly fifteen years before his financial troubles, and the grantor was endeavoring to

provide for his daughter as he had for his two sons, to whom he had given or conveyed a similar interest.

"It is contended that the reservation of power, with the right of appointment, destroyed the conveyance by the grantor to his daughter, and left him, so far as creditors are concerned, as if no conveyance had been made. There can be no doubt but that the title passed from the grantor to the grantee (his daughter) at the date of the conveyance, and, if not made for a fraudulent purpose, we perceive no reason why the father could not make such a settlement upon his daughter when not affecting the rights of others. She did not hold the property in trust for her father, but the title was in her, subject to the power reserved in the deed, on the part of the grantor, to change the use to, or for the benefit of another."

In the conveyance considered in the case of *In re Dolan's Estate,* 279 Pa. 582, 124 Atl. 176, 49 A. L. R. 858, the grantor reserved the right to change the trustee and

". . . expressly reserves to herself the right to revoke this trust in its entirety or from time to time add to, alter or amend the same as to her shall seem fit."

Of that power, the court said:

"The annexation of the power of revocation does not affect the grantee's power of enjoyment, or prevent the sale of the property, privately or judicially, though the grantee takes the estate with the possibility of its being divested by the happening of an uncertain event, to wit, the exercise of the power of revocation. Through the exercise of that right reserved, the property may be recalled. But the right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted; to all intents and purposes, title and possession pass just as effectively as any deed or grant could make it, continuing in that state so long as the power of revocation lies dormant."

322

See, also, *Windolph v. Girard Trust Co.*, 245 Pa. 349, 368, 91 Atl. 634.

1 Perry on Trusts and Trustees (7th ed.) § 104, p. 136, citing many cases, says:

"Although the power of revocation is reserved, the trust is as good and effectual as if irrevocable, until the power is exercised."

Also, see *Allen v. Hendrick,* 104 Ore. 202, 206 Pac. 733; *National Newark & Essex Banking Co. v. Rosahl,* 97 N. J. Eq. 74, 128 Atl. 586.

The reservation of power to direct the investments and reinvestments of trust funds does not amount to a use prohibited by statute. In *Offutt v. King,* (D. C.) 1 MacArthur 312, discussing the effect of such power, the court said:

"The ground for asking that the conveyance be declared void is this power reserved by the grantor as to the sale and investment of the trust-estate. It is a sufficient answer to this objection that the trust pervades the entire deed and attaches to the property, however changed. We cannot see how this reservation can invalidate a deed of trust. A man may convey his property upon any trusts that are not prohibited by law; and surely there is nothing unlawful in the mere fact that he retains a controlling voice in the variation of the trust-estate for the benefit of minor children."

Also, see *Eufaula National Bank v. Pruett,* 128 Ala. 470, 30 So. 731.

Concerning the objection to the conveyance in this case that the trust property is not to be distributed until after the death of the grantors, there is nothing about that provision which contravenes either the language or the purpose of the statute. Such a provision is usual, especially in the cases of family settlements, and is in no way inconsistent with the passing of the property out of the donor and vesting it in the

trustee for the beneficial use of another, and the fact that the beneficiaries were not to come into the enjoyment of the property until after the death of the donor does not affect the vesting of their interest. *National Newark & Essex Banking Co. v. Rosahl,* 97 N. J. Eq. 74, 128 Atl. 586.

The second trust agreement, dated March 24, 1930, as already stated, was not intended to revoke the existing trust, but simply to modify the former instrument by a surrender of the personal power of revocation and change of securities theretofore held by the grantors.

The so-called letter of revocation, dated April 25, 1930, was given at the request of the bank officials, as the evidence shows, to enable the bank to have the stock re-issued in its name according to the terms of the trust agreement, and could not, and did not, in any way affect the title to the property involved, nor the interest in it already vested in the beneficiaries.

Judgment in both cases in all respects affirmed.

BEALS, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.